UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TABETHA RUSS,

      **Plaintiff,**

v.                                    Case No.  2:10-CV-452-29DNF

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

      Plaintiff appeals to the district court from a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI)[1] benefits under §1631(c)(3) of the Social Security Act, 42 U.S.C. § 1373(c)(3). Plaintiff applied for benefits on October 30, 2006, alleging disability beginning October 1, 2006. Plaintiff was denied on March 15, 2007, and upon reconsideration on June 22, 2007. Plaintiff filed a written request for hearing and a video hearing was held on September 24, 2009. Plaintiff appeared in Fort Myers, Florida and Administrative Law Judge "ALJ" Mary Brennan presided over the hearing from Ft. Lauderdale, Florida. Present at hearing: Larry Benovitz, M.D., a psychiatrist and impartial medical expert; Nicholas Fidanza, an impartial vocational expert; Plaintiff and

---

[1] The disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

Plaintiff's counsel, Jonas H. Kushner. Plaintiff filed a Request for Review which was denied on June 11, 2010 (Tr. 1-4). The ALJ's decision became the final decision of the Commissioner. For the reasons set forth below, it is respectfully recommended that this case be **AFFIRMED**.

Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for judicial review under 42 U.S.C. 405(g). The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff filed an application for supplemental security income on October 30, 2006, claiming disability as of October 1, 2006 (Doc. 10). On September 24, 2009, the Honorable Mary Brennan, Administrative Law Judge, held a video hearing on Plaintiff's claims. On November 12, 2009, the ALJ issued a decision that Plaintiff has not been under a disability, as

defined in the Social Security Act and is not entitled to supplemental security income. (Tr. 20). The Appeals Council considered the issues raised in the letter dated March 22, 2010, from Plaintiff's counsel but found no basis for changing the ALJ's decision. On June 11, 2010, the Appeals Council denied review (Tr. 4).

At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of October 30, 2006 (Tr. 12). At Step 2, the ALJ found that Plaintiff has the following severe impairments: "status post fixation of left femur, bipolar disorder, and schizo affective disorder" (Tr. 12). At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1567(a) and 416.967(a) (Tr. 12). At Step 4, the ALJ determined Plaintiff has the ("RFC") residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 416.967(b). The ALJ further determined with the assistance of a Vocational Expert ("VE"), that Plaintiff could return to her past relevant work as a "small product assembly [worker]" (Tr. 18). Accordingly, the ALJ determined Plaintiff not disabled at step five of the sequential evaluation 20 C.F.R. 404.1520(g) (Tr. 22).

The standard or scope of review applicable to this case is limited to determining whether the findings of the Commissioner are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971), and whether the correct legal standards were applied, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is defined as "'more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Crawford v. Commissioner of Social Security*, 363 F.3d

1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## II.   REVIEW OF FACTS

### (A)   Background Facts:

Plaintiff was born on January 28, 1979, and was 30 years old at the time of the hearing (Tr. 19). Plaintiff testified she went to a special school, a Career Development School. Plaintiff was unable to remember what grades she passed or repeated. Plaintiff has difficulty reading and writing. Plaintiff attempted to obtain a general equivalency diploma ("GED") but was not successful. Plaintiff worked as a medical equipment assembler, gas station cashier, restaurant cashier, grocery store cashier and theme park caterer (Tr. 32-34). Plaintiff testified her various jobs as cashiers did not last long as "she made too many mistakes" (Tr. 44-46).

The ALJ found that Plaintiff retained the "RFC" to perform light work with additional restrictions[2] (Tr. 14-18). The ALJ found Plaintiff could perform her past work as a small product assembler and perform a significant range of alternate work. Therefore, the ALJ found Plaintiff not disabled (Tr. 18-20).

---

[2] The ALJ determined Plaintiff can perform simple, routine, repetitive tasks over a normal eight hour workday, in a stable work environment with only occasional changes in work routine, with simple decision making, occasional close interpersonal interacts with coworkers, the public and supervisors (Tr. 14).

In January of 2006, Plaintiff was treated at the emergency room for complaints of back pain and a respiratory infection (Tr. 295-9). In September of 2006, a MRI of her left hip and x-ray of her left femur revealed a bone cyst (Tr. 265, 302-4, 317-23). In October of 2006, Plaintiff underwent a left femoral biopsy with rod implant and screw fixation (Tr. 325-338).

In December of 2006, Plaintiff was seen by Michele Faucher, LCSW of Behavioral Health Division, Winter Haven Hospital[3]. Plaintiff advised that her goal was to become and remain mentally stable. Plaintiff was scheduled for individual therapy and psychiatric evaluation at least once per month, for 6 months. At this initial visit, Plaintiff received a comprehensive Psychosocial Assessment. Plaintiff was found to have psychosocial and environmental problems, i.e. economic, education, housing, occupational and social problems. Plaintiff was assessed with a GAF score of 58 (Tr. 368). Plaintiff was to have a brief psychiatric assessment: "one per 4 weeks until stable on meds, then one per 12 weeks for 26 weeks (Tr. 369)

On January 4, 2007, Plaintiff was seen by Dr. David Cheong for follow-up of her surgery. A "biopsy with intramedullary nail fixation" was performed on October 4, 2006 of the "left proximal femur". Plaintiff ambulated with a slight limp, but was using no assistive device. Plaintiff advised Dr. Cheong that she had recently been hiking in the woods with her family and reported some discomfort but overall Dr. Cheong noted that Plaintiff was feeling better and her pain had improved. By April 2007, Plaintiff reported improved pain relief, had only a slight persistent limp and Dr. Cheong's notes revealed "the medications are working,

---

[3] The record only shows that Plaintiff came in as a "self-referral", and advised that she had recently relocated.

and she is found to be stable and within normal limits" (Tr. 6, 358, 427).

On January 18, 2007, Plaintiff went to the Behavioral Health Division of Winter Haven Hospital, Inc., for her brief psychiatric assessment where it was documented that there was "a slight improvement in her mood with medication" and she was assessed (by a physician and/or ARNP - signature illegible) with a GAF score of 60 (Tr. 364)[4].

On January 22, 2007, Plaintiff was referred by the Office of Disability Determinations to Dr. Cynthia McDanal, a licensed psychologist for a General Clinical Evaluation with Mental Status examination. (Tr. 397-399). Plaintiff alleged being confused, having auditory hallucinations, and alleged multiple personality disorder (Tr. 397). Plaintiff also incorrectly stated that she took her medications "regularly" (Tr. 398)[5]. Dr. McDanal indicated Plaintiff's mood and affect were within normal limits at the interview and no psychotic symptoms were observed at the interview (Tr. 398-9). However, Dr. McDanal ultimately determined that "her mood disturbances occur in conjunction with her Schizophrenia and do not reflect a separate Biopolar Disorder. Ms. Russ's psychiatric difficulties are felt to result in marked impairment in her ability to function adequately on a daily basis" (Tr. 399). Dr. McDanal recommended "Plaintiff needs to continue regular mental health treatment, including medication and counseling, although she appears unwilling to undergo counseling at this time". Dr. McDanal also recommended: "she be provided assistance in managing any monetary benefits she receives" (Tr. 399).

---

[4] A GAF score of 51-60 is consistent with moderate symptoms or moderate difficulty in social, occupational, or school functioning.

[5] The relevant medical evidence shows Plaintiff was stable on Depakote for bipolar disorder with frequent non-compliance (Tr. 242, 244, 248, 378).

On May 17, 2007, Plaintiff was once again seen at the Behavioral Health Division at Winter Haven Hospital, Inc., for a brief psychiatric assessment (by a physician and/or ARNP - signature illegible) where it was noted Plaintiff had "no clinically significant findings with regard to mood/affect, thought process, and cognition" and her GAF score remained stable at 60 (Tr. 464). Plaintiff's reported she was out of her medications, and her prescriptions were refilled (Tr. 466). On February 14, 2007, a note shows that "Client failed to present for scheduled appointment. No show letter sent" (Tr. 467).

On September 18, 2009, Dr. Richard Wilson, a treating physician, completed a physical residual functional capacity assessment indicating Plaintiff could not perform even sedentary work (Tr. 526-527). Dr. Wilson indicated Plaintiff could perform no standing or walking and could complete only 1 hour of sitting in an eight hour work day (Tr. 526). Dr. Wilson noted Plaintiff could not lift any weight and could not perform fine manipulation (Tr. 526). Dr. Wilson also indicated Plaintiff could not squat, crawl, climb, or reach above shoulder level (Tr. 527).

On March 14, 2007, Dr. James Mendelson, a state agency psychologist, reviewed a portion of the medical evidence and concluded that Plaintiff had a schizo affective disorder, bipolar disorder, and substance addiction disorder[6] (Tr. 400-17). Dr. Mendelson concluded Plaintiff would have "mild to moderate limitations" (Tr. 410, 414-6).

---

[6] The record documents Plaintiff's history of drug/alcohol abuse. (Tr. 242, 260-1). Under relevant law, a claimant can no longer be eligible for disability benefits based on drug or alcohol addiction. The SSR provide that if a claimant is disabled and drug/alcohol abuse is a material factor contributing to the disability, he/she is not entitled to benefits based on this consideration. 20 C.F.R. § 416.935

On June 15, 2007, Dr. Cheryl Woodson, a state agency psychiatrist, reviewed a portion of the medical evidence and affirmed Dr. Mendelson's opinion (Tr. 470-85).

On June 22, 2007, Dr. Efren Baltazar, a state agency physician, reviewed the medical evidence and concluded Plaintiff could perform medium and light work (Tr. 486-93). Dr. Baltazar indicated Plaintiff could frequently lift and carry up to 25 pounds and could sit or stand/walk up to 6 hours in an eight hour day (Tr. 486-7). Dr. Baltazar noted Plaintiff would be limited in pushing and pulling with the lower extremities, and could occasionally perform postural movements (Tr. 487-8). Dr. Baltazar noted Plaintiff could never climb ladders, ropes, or scaffolds (Tr. 488). Dr. Baltazar also indicated Plaintiff should avoid concentrated exposure to cold, heat, humidity, fumes, and work around hazards (Tr. 490).

### (B)     Testimony of Dr. Larry Benovitz to the ALJ at Hearing

Dr. Larry Benovitz, a psychiatrist, reviewed the medical evidence and testified at the administrative hearing as an impartial medical expert (Tr. 54-63). At the hearing, the ALJ asked Dr. Benovitz to "identify any mental impairments that are evidenced by medical signs and findings of psychological abnormalities in which are demonstrated by medically acceptable clinical or laboratory findings?" Dr. Benovitz: A. Well, given the limits of the record there a (sic) couple diagnosis were noted, diagnosis for another bipolar disorder, also schizophrenia chronic undifferentiated type, also schizo affective disorder. Those were - - Q. And, Doctor, in your opinion do any of the claimant's impairments, when considered individually or in combination meet any of the listings?" A "Well, I don't know in terms of certainly the last couple years, that's the problem. .... with the lack of ongoing treatments it's difficult to say more than that. .... it is baffling to me why she's not continuing to receive treatment. I know

she explained the reason that she is, it's much priority (sic) than the pain in the leg. But still, it would seem to me based on what I see in this record that if she's had some problems that deserve treatment, but if the record isn't there it's not there". Q. So based on the record that you've reviewed there is no impairment that meets or equals a listing?" ---- A. "Since 2006 there is no evidence the claimant met or equaled a listing". (Tr. 55, 57). Dr. Benovitz further testified that he found Plaintiff capable of performing simple, routine, repetitive tasks with limited interaction with co-workers and the public (Tr. 58).

### III. SPECIFIC ISSUES

#### A. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY "RFC" IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The Plaintiff argues that the ALJ's determination of Plaintiff's ""RFC" of "minimally reduced light range of work" is not supported by the evidence. The ALJ evaluated the evidence of record and concluded that Plaintiff could perform light work with additional limitations (Tr. 14-8).

The ALJ discounted the opinion from Dr. Wilson, Plaintiff's pain management physician, by noting that Dr. Wilson's opinion was extremely restrictive and not supported by the objective evidence (Tr. 16, 526-7). Dr. Wilson completed a physical residual functional capacity assessment. He claimed Plaintiff was unable to walk, stand or sit for more than 1 hour total in an eight-hour work day. Dr. Wilson found Plaintiff unable to do any lifting. Yet, Dr. Wilson's office visit notes reflect many occasions when the Plaintiff did not have any complaints, had normal physical examinations and findings were within normal limits. On one of the visits, Plaintiff only came in to ask for "paper for (sic) disability" (Tr. 7, 524, 525).

Plaintiff testified at the hearing that she is able to care for her own personal hygiene. She testified to being able to do laundry, care for her children, and go shopping (Tr. 13). Plaintiff testified that she resides with several family members and has "some good friends". (Tr. 13). Plaintiff also reported she went camping and hiking, and riding an ATV - activities that also do not match with Dr. Wilson's restrictive opinion (Tr. 358, 427). The ALJ did not find Dr. Wilson's opinion "well supported" by any medically acceptable clinical findings and/or lab work or diagnostic testing.

Regarding Plaintiff's mental limitations, the ALJ discounted the opinion from Dr. McDanal, the examining psychologist, that Plaintiff had a "marked impairment in her ability to function adequately" (Tr. 15-16, 397-9). Dr. McDanal's evaluation revealed Plaintiff's mood and affect were within normal limits and no psychotic symptoms were observed at the interview (Tr. 398-399). Plaintiff also made statements to Dr. McDanal that are not supported by the record, i.e., that she took her medication "regularly", experienced confusion, had auditory hallucinations, and had been diagnosed with multiple personality disorder (Tr. 397-8).

The ALJ relied on the opinion of Dr. Benovitz, an impartial medical expert, who testified and also questioned Plaintiff at the hearing (Tr. 17-18, 54-63). 20 C.F.R. § 416.927(f). Dr. Benovitz stated he had reviewed the entire medical record and noted Plaintiff had not sought mental treatment in the last two years so it was difficult to determine the severity of Plaintiff's mental impairments. Dr. Benovitz found no documented records of any episodes of decompensation (i.e., such as being hospitalized or any suicide attempts during this time). (Tr. 57-8). Further, Plaintiff confirmed at the hearing that she was no longer taking any psychotropic medications (Tr. 55). Dr. Benovitz, therefore, opined that there was no evidence since

10

2006 that Plaintiff met or equaled a mental impairment listing.

The ALJ determined that since Dr. Benovitz' opinion as a psychiatrist and medical expert was based on a thorough review of the evidence that his determinations were credible because they were supported by objective clinical findings and treating progress notes in the record. The ALJ accorded great weight to Dr. Benovitz' opinion that Plaintiff's impairment did not meet or equal a listing; and, also supported the findings and recommendations of the State agency psychological consultants. SSR 96-6p.

The ALJ posed the following hypothetical question to the VE during the hearing: "an individual with Plaintiff's relevant vocational characteristics and with the ability to perform light work with additional restrictions as noted .... and limited to simple, routine, repetitive tasks on a sustained basis over a normal eight hour work day ..... Could she perform any of her past (sic) or could she perform her past relevant work?" (Tr. 63-5). In response to the ALJ's hypothetical, the VE indicated that such an individual could perform her past relevant work as a small product assembler and also work at the light level as an electronics worker and/or injection molding tender (Tr. 65). The VE testified that approximately 3,000 of these jobs existed in the State of Florida (Tr. 65). Therefore, the VE established that there were a significant number of other jobs that a person with the limits identified by the ALJ that Plaintiff could perform. *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1986).

Under the Act, Plaintiff bears the burden of proving that she could not perform her past relevant work. *Macia v. Bowen*, 829 F.2d 1009 (11th Cir. 1987); *Jackson v. Bowen*, 801 F.2d 1291 (11th Cir. 1986). Past relevant work is defined as work activity of a substantial gainful nature performed within fifteen years preceding adjudication for a period long enough to learn

11

the job. 20 C.F.R. § 416.945. If Plaintiff can still do any of her past work, she will not be found disabled. The relevant inquiry is not whether Plaintiff can perform a specific former job, but rather, whether Plaintiff can perform her former work as a "small product assembly [worker]". (Tr. 18).

The ALJ properly evaluated the medical evidence of record and properly concluded that Plaintiff could perform light work with additional limitations (Tr. 14-18).

### B. THE ALJ ERRED BY FAILING TO PROPERLY EVALUATE PLAINTIFF'S PAIN AND CREDIBILITY

The Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of symptoms including pain. 20 C.F.R. § 416.929(a), SSR 96-7P. In evaluating symptoms, the regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 20 C.F.R. § 416.929(a). Rather, medical signs and laboratory findings must be present which show a medical impairment(s) which could reasonably be expected to produce the symptom(s) alleged. 20 C.F.R. § 416.929(a). The standard for evaluating pain in the Eleventh Circuit requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In fact, pain alone can be disabling, even when its existence is unsupported by objective evidence. *Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir. 1985).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62. As a matter of law, the failure to articulate the reasons discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ focused on Dr. Wilson's examinations (regarding pain) which found Plaintiff was within normal limits and her physical examinations were normal. As noted previously, Dr. Wilson's office visit notes showed that there were numerous occasions when Plaintiff was seen by Dr. Wilson but did not specify any particular complaint or mention her level of pain. This contrasts with the current claim of on-going, disabling symptoms since the alleged onset date. In addition, Plaintiff was found to be non-compliant with her medications which would bring into question how severe her pain really was if she was not taking her pain medications. The ALJ even states in his decision that he requested clarification or supportive documents to support Dr. Wilson's opinion; however, Dr. Wilson failed to provide or respond to said request (Tr. 7).

The Plaintiff testified Dr. Cheong had recommended that she would need more surgery. However, there is no indication of this recommendation in the file. Instead, the record documents a treatment note which states: "Plaintiff was advised by Dr. Cheong that the screws that were implanted would have to be removed". Thus, there is evidence that indicates Plaintiff had been advised the "hardware" would eventually need to be replaced, but it was not about a

13

"surgery"[7] which had been recommended by her doctors to improve her current condition. (Tr. 7-8). Additionally, Dr. Wilson, her pain management physician had not considered it necessary to recommend further surgery or refer her for an evaluation. (Tr. 8).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not credible. Plaintiff testified her life changed drastically since her surgery; however, the record shows Plaintiff did not work for five years prior to her surgery[8]. The ALJ notes her lack of work history greatly diminishes the credibility of her allegations concerning her ability and willingness to sustain regular and continuing work. The Plaintiff's surgery for the alleged impairments, certainly suggests that the symptoms were genuine, but it is offset by the fact that the record shows the surgery was generally successful in relieving Plaintiff's symptoms and the post-surgery treatment notes all reflect improvement of her symptoms and her pain. (Tr. 7).

The ALJ properly concluded that Plaintiff's statements concerning her physical pain and mental impairment and their impact on her ability to work were not totally credible (Tr. 14-8). 20 C.F.R. § 416.929; SSR 96-7p.

## IV.   CONCLUSION

The ALJ determined that Plaintiff would be able to perform light work with additional limitations including: occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no balancing, work in high exposed places, or climbing ladders, ropes, and scaffolds;

---

[7] Plaintiff had reported to the consultative examiner that she would remain disabled because she would need additional surgery or surgeries (Tr. 8).

[8] Plaintiff's application is for Supplemental Security Income ("SSI") only.

occasional exposure to extreme temperatures and atmospheric conditions; the ability to perform simple, routine, repetitive tasks in a stable environment with only occasional changes in work routine; simple decision making; and occasional close interactions with co-workers, the public, and supervisors (Tr. 63-5). With this residual functional capacity, the ALJ found that Plaintiff could return to her past relevant work as a small products assembler (Tr. 65).

The ALJ determined and substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work and or other light work with limitations in the national economy. The ALJ properly concluded that Plaintiff was not disabled pursuant to 20 C.F.R. § 416.920(f) (Tr. 18-9).

## V.    RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the decision of the Commissioner be *AFFIRMED*. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** in Chambers, Fort Myers, Florida, this 13th day of September 2011.

The Court Requests that the Clerk
of Court Mail or Deliver Copies of
this Order to All Parties and All
Counsel of Record

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE